ALBERT B. KENYON vs. SUBURBAN REALTY CORPORATION.

Suffolk.    March 6, 1923. — April 17, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract*, What constitutes, Performance and breach, Implied.

At the trial of an action of contract to recover damages for the alleged failure of the defendant to sell to the plaintiff certain parcels of land in accordance with a letter written by the defendant to the plaintiff on a July 2 in the following terms: "Dear Sir: In consideration of the release to the trustees of F, signed this day, the . . . [defendant] will give you the right for ninety days to buy from them lots and houses numbered .. . . at a price which shall pay to them entire cost, taxes, and interest, as represented by their books or F's books," there was evidence that during the ninety days the plaintiff asked the treasurer of the defendant for the figures upon the lots and at all times was promised them; that after October 2 the treasurer informed the plaintiff that he was instructed not to give them; and that the plaintiff's wife previously had held the title to the property, the beneficial ownership having been in the plaintiff. The plaintiff testified that he could not say he used words of acceptance to the defendant's treasurer; that he never notified the defendant in writing of acceptance; that he did not offer any price to the defendant during the ninety days; that he never asked to see the books or take off the figures; that he knew the amount and rate of interest of the construction loan on the premises and of the schedule of rents therefrom, but that he had no knowledge of the repairs or of the expenses of rental. There was no evidence that the plaintiff was refused access to the books. *Held*, that

(1) While the defendant was bound to keep its offer in the terms of the option open for the period of ninety days from its date, there was no implication from the agreement that the defendant would furnish the plaintiff with figures from its books which would enable the plaintiff to make an intelligent choice whether he would accept the offer of the defendant or not;

(2) The promise of the treasurer of the defendant to furnish the figures did not become an element of the original contract requiring action on the part of the defendant and excusing non-action on the part of the plaintiff;

(3) In the absence of notice from the plaintiff to the defendant that he had elected to accept the offer at a price named or to be ascertained from the books, no contract of purchase and sale ever came into existence;

(4) In the absence of any evidence showing an agreement to purchase at whatever price the book figures disclosed, the neglect and refusal of the defendant to furnish the promised information could not be made the basis of an action for damages for the refusal to sell the property.

CONTRACT upon an alleged agreement, described in the opinion, for the sale of real estate.    Writ in the Municipal Court of the City of Boston dated October 21, 1919.

Proceedings and material evidence in the Municipal Court are described in the opinion. At the close of the evidence the defendant made requests for findings of fact as follows:

"1. That the plaintiff never signified to the defendant his acceptance of the terms of the option in such way as himself to become bound thereby.

"2. That the plaintiff never made a tender to the defendant of the purchase price of the lots or of any part of the purchase price.

"3. That the plaintiff was never refused access to the books of the defendant or Eugene N. Foss.

"4. That an inspection by the plaintiff of the entries in these books would have disclosed to him the exact purchase price of the lots and houses.

"5. That the plaintiff knew the amount and rate of interest of the construction loan on the premises and of the schedule of rents therefrom.

"6. That the plaintiff knew the approximate cost of the lots and houses without reference to the defendant's books or those of Eugene N. Foss.

"7. That the defendant owned the lots and houses throughout the entire period of the option.

"8. That the plaintiff was not himself financially able during the period of the option to pay the purchase price of the houses and lots.

"9. That the plaintiff never signified to the defendant that he desired the exact figures in order to accept the option.

"10. That the plaintiff never signified to the defendant that he would accept the option if given the figures from the books."

The judge made the findings requested as above except those numbered 4, 5 and 6 which he did not make. He also made a finding as follows:

"I find the plaintiff at no time during the life of the option by word or conduct directly or indirectly, presently or prospectively indicated to the defendant an acceptance of the option by him or an unequivocal election to accept upon receipt of the figures whatever they might be found to be. But I find that he frequently asked for the figures and was repeatedly promised them by the defendant and that the situation was such that until he got the

figures he was in no position to make an intelligent choice whether to accept or not. The defendant did not suggest nor did either party contemplate that the plaintiff should get out the figures from the books. The defendant never gave the figures and never during the life of the option withdrew its promise to give them.

"The plaintiff was not himself financially able to take up this option but had found customers ready and able to purchase the lots at a price which would show a profit to the plaintiff and I find that had not the defendant withheld the figures of price the plaintiff would have accepted the option and carried it through."

At the close of the evidence the defendant also requested the following rulings:

"1. That on all the evidence the plaintiff is not entitled to recover.

"2. That to entitle the plaintiff to recover he must have made a tender or offer of tender of the purchase price during the period of time covered by the option shown in Exhibit 'A' or any agreed extension of the time.

"3. That to entitle the plaintiff to recover he must have made an unequivocal acceptance of the option within the period of time covered by it or any agreed extension of the time.

"4. That failure of the defendant to furnish the price of the lots on their books does not waive tender of a purchase price so far as known by the defendant.

"5. That if the plaintiff were not refused access to the books of the defendant and to the books of E. N. Foss, and if he could have computed the purchase price therefrom he cannot recover unless he made a tender of said purchase price.

"6. That the option required by its terms the payment of the purchase price within the period of time set forth in the option or any agreed extension of the time.

"7. That the terms of the option required an unequivocal acceptance by the plaintiff and a tender of the purchase price, or as much thereof as the plaintiff knew or could reasonably ascertain, within the time set or any extension thereof.

"8. That a failure of the defendant to compute and furnish to the plaintiff the price set in the option does not relieve the

plaintiff from taking all reasonable means to ascertain the same from the defendant's books.

"9. That the plaintiff cannot recover unless he has agreed to accept the terms of the offer and to perform his part even though the defendant did not advise him of the entire cost, taxes and interest as specified in the option.

"10. That to recover in this action the plaintiff must furnish sufficient evidence of his financial ability to pay the purchase price of the lots during the period covered in the option or any agreed extension thereof.

"11. That the plaintiff was under no duty to furnish figures showing the entire cost, taxes and interest called for under the option in order to permit the defendant to negotiate for the re-sale of the lots by the defendant or to raise money thereon.

"12. That Exhibit 'A' of the plaintiff's declaration sets forth an offer to a contract for the sale of the lots.

"13. That if the defendant was ready and willing to compute the price referred to in Exhibit 'A' on notice of the plaintiff's acceptance of the option, the defendant has complied with all its duties to the plaintiff and the plaintiff cannot recover.

"14. That the excess of the sound value of the lots during the time of the option, or any extension thereof, over and above the price of the same referred to in Exhibit 'A' is not a measure of the plaintiff's damages.

"15. That a refusal by the defendant or its agents or servants to disclose to the plaintiff when requested the cost of said houses as shown by the defendant's books or the books of Eugene N. Foss would not be a repudiation of the contract by the defendant such as would entitle the plaintiff to recover.

"16. That a failure by the defendant, or its agents or servants, to compute and furnish to the plaintiff when requested the cost of said houses, as shown by the defendant's books or the books of Eugene N. Foss, would not be a repudiation of the contract by the defendant such as would entitle the plaintiff to recover.

"17. That on all the evidence the plaintiff has shown no damages which he may recover in this action other than nominal damages."

The judge refused to rule as requested except that he gave the rulings in requests numbered 12 and 14.

The judge found for the plaintiff in the sum of $1,800 and upon request of the defendant reported the action to the Appellate Division, who dismissed the report. The defendant appealed.

*H. Alden,* for the defendant.

*J. G. Bryer,* for the plaintiff.

PIERCE, J.  This action of contract was twice tried in the Municipal Court of the City of Boston, before the Chief Justice of that court.  The Appellate Division ordered a new trial on the report of the first trial, and entered an order "Report dismissed" on the report of the second trial.  The case is before this court on the appeal of the defendant.

The contract upon which the plaintiff seeks to recover damages for the alleged failure of the defendant to sell to the plaintiff certain parcels of land is dated Boston, July 2, 1919, and, omitting the names and titles of the plaintiff and the defendant, reads as follows: "Dear Sir:  In consideration of the release to the trustees of E. N. Foss, signed this day, the Suburban Realty Corporation will give you the right for ninety days to buy from them lots and houses numbered 291, 289, 288, 285, 284, 283, at a price which shall pay to them entire cost, taxes, and interest, as represented by their books or E. N. Foss' books."  The plaintiff sought to recover as damages the difference between the fair market value of the estate referred to in the above memorandum of contract and the cost of the same, taxes, and interest as represented by the books of the Suburban Realty Corporation or the books of E. N. Foss.  The declaration of the plaintiff alleged "that he has always been ready and willing to perform his part of said contract but the defendants have refused and neglected to carry out the terms, conditions and obligations entered into by them."

It appeared in evidence that the wife of the plaintiff had previously held title to this property, the beneficial ownership being in the plaintiff; that early in the year 1919, at the request of the trustees for Eugene N. Foss, arrangements had been made for the conveyance of the property to the defendant, and the plaintiff had also released to said trustees certain rights, all of which were the consideration for the option above set forth; that the written agreement upon which the plaintiff declares, merely reduced to writing a former verbal arrangement which the plaintiff had had with the defendant corporation; that the word "cost"

in the said agreement represented the amount of the construction loan on each of said houses, plus anything that had been expended upon the property in the way of repairs, improvements and expenses, with a credit for all income from the property, and that the balance was the amount which the plaintiff was to pay for the property under his option.

There was also evidence that during the ninety days the plaintiff asked one Brown, who was treasurer of the defendant corporation up to July 28, and thereafter one Weeks, who succeeded him in office, for the figures upon the lots, and at all times was promised them. The plaintiff testified that during the last week in August, and again in the middle of September, he told Weeks that he had customers and needed the figures; that in September he told Weeks he was afraid he would lose his option and Weeks replied that they did not do business that way, that he would get the figures, although it would be a hard job. Brown testified in substance that he told the plaintiff when he asked for the figures "he would confer with Weeks, and give him the figures, and that after that he 'shirked it on to Weeks.'" Weeks testified, when called by the plaintiff, that the plaintiff asked him for the cost figures at least half a dozen times in the ninety days; that before October 2 he said he would give them as soon as he could make them up; that after October 2 he informed the plaintiff he was instructed not to give them.

The plaintiff testified that during the lifetime of the option he had an offer from one Higgins and one Hodge for each house and lot, and had several other customers for the property, but delayed taking any definite action until he could find what the cost figures were; that he did not have the cash to take up the property or any building agreement of sale to third persons, but had the offers above referred to; that he could not say he used words of acceptance to either Weeks or Brown; "that he never notified the defendant in writing of acceptance;" that he did not offer any price to it during the ninety days and that he never asked to see the books or take off the figures. He further testified that he knew the amount and rate of interest of the construction loan on the premises and of the schedule of rents therefrom, but had no knowledge of the repairs or of the expenses of rental.

Upon the foregoing facts the plaintiff contends that he has

a right to recover on his declaration, without an allegation or proof that within ninety days from the date of the optional contract he had notified the defendant that he elected to exercise the option, and was ready to pay the price when he should receive the information which he requested and which the officers in response thereto had many times promised to give to him. He rests this position upon the claim that the optional contract impliedly required the defendant to furnish the plaintiff with information derived from its books which would enable him to exercise intelligently the rights granted him under the option; and upon the further claim that the neglect and refusal of the defendant to disclose the costs of the houses as shown by the books, after many promises so to do, was a repudiation of the contract by the defendant which excused the plaintiff from a declaration of his election to accept the offer and from an actual tender of money before the defendant had done what it had engaged to do.

The optional contract given to the plaintiff by the defendant, supported as it was by a valuable consideration, bound the defendant to keep its offer in the terms of the option open for the period of ninety days from its date. The plaintiff assumed no obligation to the defendant thereunder. The defendant did not during the period of ninety days withdraw the offer of sale, nor did it place itself in a position where it was impossible to perform. We do not think the contract of the defendant contained the implied agreement that it would furnish the plaintiff with figures from its books which would enable him to make an intelligent choice whether he would accept the offer of the defendant or not. Nor do we think that the promise of its treasurers so to do became with their promises an element of the original contract, which required action on the part of the defendant, and excused non-action on the part of the plaintiff. No acts of the defendant are disclosed which hindered or prevented the fullest examination of its books by the plaintiff or by any qualified agent whom it might select. In the absence of notice from the plaintiff to the defendant that he had elected to accept the offer at a price named or to be ascertained from the books, no contract of purchase and sale ever came into existence. The neglect and refusal of the defendant to furnish the promised information cannot be made the basis of an action for damages for the refusal to sell the prop-

erty, at least in the absence of any evidence showing an agreement to purchase at whatever price the book figures disclosed. *Stokes* v. *Carpenter*, 166 App. Div. (N. Y.) 441; affirmed in 218 N. Y. 705. In the opinion of a majority of the court it results that the order, "Report dismissed," is reversed, and judgment is to be entered for the defendant.

*So ordered.*